

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/10/2009

| | | |
|---|---|---|
| IN RE: | § | |
| MARK ANTHONY BLAKE | § | CASE NO: 07-32168 |
|    Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| JONATHAN & SAMANTHA LEVINE | § | |
|    Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-03469 |
| | § | |
| MARK ANTHONY BLAKE, *et al* | § | |
|    Defendant(s) | § | |

## MEMORANDUM OPINION

### Factual Background

Plaintiffs Jonathan and Samantha Levine ("the Levines") hired defendant M&A Custom Home Builder & Developer, LLC ("M&A") to construct their home. M&A is wholly owned by defendant Mark Anthony Blake ("Blake"). M&A in turn, hired defendant S&S Construction Group ("S&S") to carry out construction of the Levines' home. S&S is owned by defendant Sergio Medina ("Medina"). Medina also owns defendant Sergio L. Medina, Inc, a company Medina formed shortly after Blake filed his bankruptcy petition. The Levines transferred approximately $925,000 to Blake to be held as construction funds.

The Levines' home was never built. The Levines contend that Blake induced them to transfer the $925,000 through fraudulent misrepresentations. The Levines contend that Blake stated that he had extensive experience building homes and displayed a portfolio book of homes and a showroom of model homes as examples of his prior works. The Levines contend that, in fact, Blake had never built a home and the portfolio and showroom actually contained examples

1

of homes built by S&S.  According to the Levines, S&S allowed Blake to use the S&S marketing materials in return for the construction contract.

The Levines contend that Blake spent over $250,000 of the construction funds on personal expenses and the remainder was transferred to S&S.  S&S did some preliminary work on the home, including clearing the lot, utility work, and pouring a foundation.  Seventy-five thousand dollars was deposited with a homeowners association as compensation for unapproved removal of trees.  Neither S&S nor Medina have accounted for the unused funds.  The Levines allege that Medina transferred the construction funds to his personal account and Sergio L. Medina, Inc.

On March 30, 2007, Blake filed a chapter 7 bankruptcy petition.  On October 30, 2007, the Levines filed this adversary proceeding.  Subsequently, the trustee of Blake's bankruptcy estate ("Trustee Cage") intervened to assert the claims of Blake's bankruptcy estate against Medina and S&S.  On March 30, 2008, the Levines and Trustee Cage filed a joint first amended complaint.  The complaint was subsequently amended by a second amended complaint filed on September 4, 2008.

The Levines seek a finding that their claims against Blake for fraud, misrepresentation, defalcation, embezzlement, willful injury, and misapplication of fiduciary property are nondischargeable under §§ 523(a)(2), 523(a)(4), and 523(a)(6).  The Levines also seek to hold M&A, Medina, S&S, and Sergio L. Medina, Inc. liable as co-conspirators and joint venture participants with Blake.

Trustee Cage asserts that M&A is the alter ego of Blake and that S&S and Sergio Medina, Inc. are alter egos of Medina.  Trustee Cage seeks to collect from defendants all transfers of the Levines' construction funds under §§ 541, 542, 548, and 550.  Under the Fifth

Circuit's *Schimmelpenninck* Opinion, Trustee Cage owns these claims. *In re Schimmelpenninck*, 183 F.3d 347 (5th Cir. 1999). The Levines do not dispute Trustee Cage's senior status with respect to these claims. Trustee Cage also seeks an accounting from defendants with respect to all Levine funds.

## Procedural Background

On July 17, 2008, Medina filed a motion demanding a jury trial and requesting this Court to withdraw the reference.

On September 22, 2008, the Court issued a Report and Recommendation that recommended withdrawal of the reference after the Court ruled on pending and expected dispositive motions. The Report found: "Medina is entitled to a jury trial. Medina has requested a jury trial. The Court may not hear a jury trial without the consent of all parties." *In re Blake*, ---B.R.---, 2008 WL 5082400 at *4 (S.D. Tex. Nov. 25, 2008) (citing *In re Clay*, 35 F.3d 190, 196–97 (5th Cir. 1994)). On November 22, 2008, the District Court adopted the Court's Report and Recommendation, withdrawing "the reference effective when the bankruptcy court rules on the dispositive motions and subject to the bankruptcy court's rulings on those motions." *Levine*, 2008 WL 5082400 at *2.

On July 21, 2008, Trustee Cage filed a motion for summary judgment against M&A on the issue of piercing the corporate veil. On July 24, the Court issued an Order requiring Blake to respond to Trustee Cage's motion by October 15, 2008. Blake did not file a response. On October 21, 2008, the Court issued an Order granting Trustee Cage's motion. The October 21 Order held that M&E was an alter ego of Blake.

On November 14, 2008, the Levines and Trustee Cage filed separate motions for summary judgment against Blake and Medina. The Levines seeks summary judgment against

Blake on their § 523(a)(2)(A) claim (docket #91). Trustee Cage seeks summary judgment against Medina on his § 548(a) claim (docket #90). On December 22, 2008, the Court held a hearing on the motions. The Court orally granted the Levines' motion and denied Trustee Cage's motion. The Court issues this written Memorandum Opinion in support of the Court's oral rulings.

## Jurisdiction

The Court has jurisdiction of this matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary Judgment Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination that is not part of the summary judgment analysis. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor*

*Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 19.

## Analysis

The Court considers the Levines' and Trustee Cage's summary judgment motions separately below.

### *i. The Levines' Motion*

#### a. Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Fifth Circuit has distinguished "actual fraud" from "false pretenses" and "false representations" when defining the elements of

5

nondischargeability under § 523(a)(2)(A). *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

For the debtor's representation to constitute "false pretenses" or a "false representation," the movant must prove: "(1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied on by the other party." *See RecoverEdge L.P.*, 44 F.3d at 1293 (5th Cir. 1995) (citing *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992)).

For a debtor's representation to constitute "actual fraud," the movant must prove: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." *RecoverEdge L.P.*, 44 F.3d at 1293.

In the Fifth Circuit, "reasonable reliance is not, as a matter of law, required under section 523(a)(2)(A)." *In re Allison*, 960 F.2d at 485. However, the movant must still show *actual* reliance. "[R]easonableness of reliance is strong circumstantial evidence in the factual determination regarding actual reliance, which is an element of subparagraph (A)."

### b. Summary Judgment Evidence

The Levines' evidence establishes that Blake obtained a construction contract with the Levines through false representations. Blake made material misrepresentations with respect to his home-building experience and qualifications. Blake presented a portfolio and showroom of homes as examples of his work. The portfolio and showroom were examples of homes that were in fact built by Medina's company. Blake presented an approved home builder application from the Sovereign Home Owners Association ("HOA"). Blake obtained the HOA approval by making numerous material misrepresentations with respect to his experience and qualifications.

Mr. Levine signed an affidavit stating that he signed the construction contract based on the above material representations. In responses to requests for admissions and deposition testimony, Blake admitted that the above material representations were false. Blake did not file a responsive motion to the Levines' summary judgment motion. Blake did not appear at the December 22, 2008 hearing.

Pursuant to the construction contract, the Levines transferred $926,762.79 to Blake. The Levines' summary judgment evidence establishes that the construction funds were misappropriated or expended for faulty construction work. Blake spent approximately $250,000.00 for personal expenditures, including gifts to his wife, girlfriend, and family members. In deposition testimony, Blake admitted that he spent approximately $250,000.00 of the funds for personal items. $75,775.00 was paid to a Homeowner's association for improper tree removal. Blake transferred approximately $600,000.00 of the construction funds to Medina. Of this amount, approximately $260,000.00 was expended on construction costs. The construction expenditures produced a foundation that has significant defects. The expenditures are documented by bank records, Mr. Levine's affidavit, and Blake's deposition testimony.

The Levines' motion includes substantial summary judgment evidence in support of his § 523(a)(2)(A) claim. The Court finds that Blake's debt to the Levines is excepted from discharge pursuant to § 523(a)(2)(A).

### c. Damages

The Levines seek a judgment for the $926,762.79 paid to Blake, $99,694.85 for attorneys' fees, $11,876.56 for costs, and treble damages in the amount of $2,780,288.37 for a total judgment of $3,818,622.57.

The summary judgment evidence detailed above establishes that the Levines transferred $926.762.79 to Blake. Approximately $263,448.00 was spent on construction costs. The Levines contend that most of the construction consisted of improper tree removal and construction of a foundation containing substantial defects. The Levines submitted an affidavit supporting their allegations. However, Mr. Levine's affidavit does not state that the Levines received no benefit from the $263,448.00 expended. The affidavit does not estimate the costs of repairing the alleged defects or the extent to which the repairs offset benefits received. Moreover, the Levines do not allege that all of the $263,448.00 was spent on the foundation and tree removal alone. The affidavit does not detail any defects with respect to a waterwell and culverts that were built. Based on the evidence presented, the Court cannot attach an exact dollar amount to the benefit the Levines received from the $263,448.00 expended. The Court estimates that the construction costs benefited the Levines in the amount of $200,000.00. Accordingly, the Court finds that the Levines are entitled to actual damages in the amount of $726,762.79.

The Levines seek attorney attorneys' fees and costs pursuant to the Texas Civil Practice and Remedies Code. Section 38.001 of the Code authorizes attorneys' fees and costs for certain claims, including contract claims. TEX. CIV. PRAC. & REM. CODE § 38.001(8). However, the Levines' second amended complaint seeks damages for fraud, defalcation, misapplication of fiduciary property, and liability as a joint venturer and co-conspirator, in addition to an exception from discharge under § 523(a)(2)(A). The second amended complaint does not assert a contract claim. The Bankruptcy Code does not contain a provision authorizing attorneys' fees and costs for § 523(a)(2)(A) claims. The Court denies the Levines' request for attorneys' fees and costs.

The Levines seek exemplary damages pursuant to § 41.003(a)(1) of the Texas Civil Practice and Remedies Code. Section 41.003(a)(1) authorizes exemplary damages for harms

8

arising from fraud. TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 484 (Tex. App.—Fort Worth 2004, no pet); *Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 33–34 (Tex. App.—San Antonio 2003, pet. denied). Section 41.010 gives the Court discretion over awarding exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.010. Section 41.011 defines the types of evidence the trier of fact must consider when using its discretion. *Id*. Under § 41.010, the Court must consider evidence in relation to: the nature of the wrong; the character of the conduct involved; the degree of culpability of the wrongdoer; the situation and sensibilities of the parties concerned; the extent to which such conduct offends a public sense of justice and propriety; and the net worth of the defendant. *Id*. Under § 41.008(b)(1)(A), the Court can award exemplary damages in an amount equal to twice the actual damages. *Id*. at § 41.008(b)(1)(A).

The summary judgment evidence discussed above is sufficient to justify exemplary damages. Blake knowingly made multiple material misrepresentations to multiple parties. Blake was an unqualified home builder who lied to get business that his lack of qualifications would have otherwise precluded him from getting. Blake knowingly spent over $200,000.00 of the Levines' money for personal expenses and gifts. There is no evidence that the Levines were a particularly vulnerable party. And there is evidence that Blake intended to build the home when the construction contract was executed. Accordingly, the Court declines to award the maximum exemplary damages allowed under § 41.008(b)(1)(A). However, Blake's conduct is sufficiently egregious to award exemplary damages in the amount of actual damages. Pursuant to § 41.003(a)(1), the Court awards exemplary damages in the amount of $726,762.75.

For the reasons set forth above, and pursuant to the Fifth Circuit's *Morrison* opinion, the Court awards the Levines judgment in the amount of $1,453,525.50. *Morrison v. W. Builders of*

9

*Amarillo, Inc.*, --- F.3d ---, 2009 WL 103693 (5th Cir. Jan. 16, 2009).  A separate order will be issued.

### ii. Trustee Cage's Claim

#### a. Section 548(a)

Section 548(a)(1) generally allows the trustee to avoid transfers made by the debtor with the intent to defraud creditors. 11 U.S.C. § 548(a)(1).[1]  Under § 548(a)(1)(A), the moving party must show that the transfer was made with the intent to hinder, delay, or defraud a creditor. *Id*. Under § 548(a)(1)(B), the moving party must show that the debtor did not receive reasonably equivalent value for the transfer and the existence of one of four additional factors that suggest the transfer was fraudulent. *Id*.

#### b. Section 548(a)(1)(A) Summary Judgment Evidence

Trustee Cage has not produced sufficient evidence to support a claim under § 548(a)(1)(A).  Blake transferred the funds at issue to pay for the construction of the Levines'

---

[1] Section 548(a)(1) provides:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >  (ii) (I) was insolvent on the date that such transfer was made or such obligation
> >   was incurred, or became insolvent as a result of such transfer or obligation;
> > > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> > > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> > > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

10

home. There is no evidence that Blake transferred any funds to Medina to hinder, delay, or defraud the Levines or any other creditor.

### c. Section 548(a)(1)(B) Summary Judgment Evidence

Trustee Cage has produced evidence supporting a claim under § 548(a)(1)(B). Trustee Cage alleges that Blake, through M&A, paid Medina at least $570,788.00. Of that amount, Trustee Cage alleges $263,448.00 was spent on construction costs. Trustee Cage alleges that Medina invoiced Blake for the remaining $307,340.00, but never spent any of that amount for construction. Accordingly, Trustee Cage contends that Blake received no benefit for the $307,340.00 paid, and therefore such amount is recoverable as a fraudulent transfer. Trustee Cage submitted deposition testimony and bank records to support his claim.

In response to Trustee Cage's motion for summary judgment, Medina submitted an affidavit stating that Blake owed Medina for work that predated the Levine contract. Medina's affidavit states that he had completed "take offs" and estimates for five prior projects and was not paid by Blake. Medina also alleges that, based on Blake's prior non-performance, Medina demanded his fee up-front when presented with the Levine contract. Medina states that his fee was 20% of the contract price, which amounted to approximately $305,000.00. If Medina's allegations are accepted as true, then, at least a portion of the $307,400.00 at issue, may have been payment on an antecedent debt arising from the non-Levine work Medina completed for Blake.

Trustee Cage contends that Medina's affidavit contradicts statements made in prior depositions and therefore the affidavit should be stricken as a sham. Medina's Rule 2004 examination and deposition testimony does contain some inconsistencies. Nevertheless,

11

Medina's deposition testimony did refer to the pre-Levine projects. Medina is not raising the possibility of an antecedent debt for the first time in his affidavit.

When considering requests for summary judgment, the Court does not make credibility determinations. *Hunt*, 277 F.3d at 762; *MAN Roland*, 438 F.3d at 478. The Court must review the non-moving party's evidence in the light most favorable to that party. *Rodriguez*, 436 F.3d at 473. Accepting as true Medina's allegation that Blake owed Medina antecedent debt that preceded the Levine contract, the Court finds a genuine issue of material fact that precludes awarding Trustee Cage summary judgment. If the trial court finds that the $307,340.00 was used to retire antecedent debt, then the $307,340.00 transfer does not constitute a fraudulent transfer under § 548(a). The transfer and Medina's use of the transfer may give rise to other causes of action. However, Trustee Cage's motion for summary judgment presents this Court only with a § 548(a) claim.

## Conclusion

For the reason set forth below, the Court grants in part the Levines' summary judgment motion (docket #91). The Court awards judgment in favor of the Levines in the amount of $1,453,525.50 and finds the debt to be non-dischargeable pursuant to § 523(a)(2)(A). The Court denies Trustee Cage's summary judgment motion (docket #90). Separate orders will be issued.

Pursuant to the District Court's Order, the Court will certify this adversary proceeding to Judge Rosenthal in 10 days, unless a motion to reconsider is filed. If a motion to reconsider is filed, the Court will certify this adversary proceeding after the Court resolves the motion.

Signed at Houston, Texas, on February 10, 2009.

MARVIN ISGUR
United States Bankruptcy Judge